UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.I.T.,

                      Petitioner,

-against-

LADEON FRANCIS, et al.,

                      Respondents.

25-CV-06749 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

      Petitioner J.I.T. fled Guatemala when he was 17 years old. He has lived in the United States for over nine years, first at a youth shelter in Bristow, Virginia, and then with family in Brooklyn, New York.[1] Since February 2, 2025, Petitioner has been held in U.S. Immigration and Customs Enforcement ("ICE") custody at the Orange County Jail in Goshen, New York. While in custody, Petitioner appeared for a bond hearing in which he bore the burden of demonstrating that he was not a danger to the community nor a flight risk. Petitioner's request for bond was denied on the grounds that he had not sufficiently demonstrated either. On August 15, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, alleging that his bond hearing was constitutionally inadequate. Petitioner seeks immediate release from ICE custody unless he is provided with a new bond hearing in which (i) the Government bears the burden of establishing that Petitioner's continued detention is justified and (ii) the adjudicator considers alternatives to detention and Petitioner's ability to pay. For the reasons set forth below, the Petition is GRANTED.

---

[1] On August 18, 2025, the Court granted petitioner leave to proceed anonymously. *See* Dkt. No. 6.

BACKGROUND

I.     RELEVANT FACTS[2]

Petitioner is a native of Guatemala and a member of the Nahuala indigenous community. Dkt. No. 3 ("Pet.") ¶ 1. The Nahuala community has been embroiled in a violent land conflict with a neighboring indigenous community in Guatemala. *Id.* On August 9, 2016, U.S. Customs and Border Protection ("CBP") apprehended Petitioner crossing into the United States near San Luis, Arizona. *Id.* ¶ 16. Because he was only 17 years old at the time, Petitioner was placed in the custody of the Office of Refugee Resettlement and transported to a shelter in Bristow, Virginia. *Id.* ¶ 16; Dkt. No. 14 ¶ 6. On August 9, 2016, CBP charged Petitioner as removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 14 ¶ 5. Petitioner appeared before the Arlington Immigration Court for hearings in the removal proceeding on December 21, 2016, and March 22, 2017. *Id.* ¶¶ 7–8.

On April 1, 2017, Petitioner aged out of the shelter and was released to a family-member sponsor in Brooklyn, New York, where he resided until he was taken into custody in February 2025. *Id.* ¶ 9; Pet. ¶ 16. On April 11, 2017, Petitioner's removal proceedings were transferred from Virginia to the New York Immigration Court. Dkt. No. 14 ¶ 11. Petitioner failed to appear at an August 3, 2017 hearing and was issued an *in absentia* removal order and ordered removed to Guatemala pursuant to INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A). *Id.* ¶¶ 12–13.

---

[2] The following facts are taken from the Petition and the sworn declarations submitted by Petitioner and Respondents (the "Government") in connection with the Petition. The relevant facts are generally uncontested.

Petitioner has been arrested twice by the New York City Police Department. On June 26, 2017, Petitioner was arrested and charged "with petit larceny in violation of New York Penal Law ("N.Y.P.L.") § 155.25 and criminal possession of stolen property in the fifth degree in violation of N.Y.P.L. § 165.40." *Id.* ¶ 14. Petitioner asserts this incident arose from him finding a wallet on the floor of a store and being falsely accused of stealing it. Dkt. No. 3-1 ¶ 7. Petitioner was subsequently arrested on January 2, 2025, "and charged with operating a motor vehicle without insurance, operating an unregistered motor vehicle, aggravated unlicensed operation of a vehicle in [the] third degree, and operating a motor vehicle without a license in violation of N.Y. Veh. & Traf. L. §§ 319.01(1), 401.01a, 511.1(a), and 509.1, respectively, and with possession of a forged instrument in the third degree in violation of N.Y.P.L. § 170.20." Pet. ¶ 18. Petitioner asserts this incident arose from his operation of a motorized scooter that lacked a proper license plate. *Id.* ¶ 2. All charges in connection with both arrests were dismissed and sealed on April 17, 2025. *Id.* ¶¶ 18–19.

On February 2, 2025, ICE officers apprehended Petitioner in Brooklyn, New York, and subsequently detained him at the Orange County Jail in Goshen, New York. *Id.* ¶¶ 16–17. On February 7, 2025, Petitioner filed a motion with the immigration authorities to reopen and rescind his 2017 removal order and to terminate removal proceedings. *Id.* ¶ 19. The basis for Petitioner's request was that he is a class member in the case *J.O.P. v. DHS*, 19-CVC-01944 (SAG) (D. Md.) and, as a result of a settlement in that case, could seek relief from his *in absentia* removal order. *Id.* ¶¶ 19, 32. On April 16, 2025, Petitioner filed a motion for custody redetermination, *i.e.*, a bond hearing, pursuant to INA § 236(a), 8 U.S.C. § 1226(a). *Id.* ¶ 29. On April 18, 2025, Petitioner filed a Form I-589 application seeking "asylum, withholding of removal, and protection under the Convention Against Torture." *Id.* ¶ 30.

3

Petitioner's bond hearing took place on April 21, 2025. *Id.* ¶ 31. At the hearing, the Immigration Judge placed the burden of proof on Petitioner to establish that he was not a danger to the community or a flight risk. *Id.* ¶ 30. During the bond hearing, Petitioner testified that his "2017 arrest occurred after he found a wallet on the floor of a store." *Id.* ¶ 34. He also testified that his 2025 arrest occurred when he purchased a moped that was already affixed with a plastic license plate of which he did not ensure the validity. *Id.* At the hearing, the Immigration Judge denied Petitioner's request for release on bond because Petitioner "had not established that he was not a danger to the community and, in the alternative, was an 'extreme flight risk.'" *Id.* ¶ 35.

On June 3, 2025, the Immigration Judge issued a written decision. *Id.* ¶ 36. In the decision, the Immigration Judge stated that Petitioner "failed to provide any evidence to establish that his conduct—which resulted in his arrest—was not dangerous to people or property." Dkt. No. 3-2 at 3. The Immigration Judge also declined to "make an inference that Kings Criminal Court's decision to dismiss" Petitioner's 2017 charges "indicates [Petitioner] did not engage in dangerous conduct against another person or property." *Id.* at 4. He further stated that Petitioner had "failed to explain the underlying conduct [regarding his arrests] to this Court's satisfaction." *Id.* at 4. The Immigration Judge also found that Petitioner was an "extreme flight risk" because he did not file any applications for relief from removal until 2025, did not provide sufficient evidence to establish stable ties to his community,[3] and failed to appear for the 2017 removal proceeding and a traffic court summons. *Id.* at 5. Petitioner filed a notice of appeal of the decision on May 27, 2025, and the appeal was denied on November 13, 2025. Dkt. No. 14 ¶ 36; Tr. at 18:14–20; Dkt. No. 21 at 1.

---

[3] Petitioner had provided letters from family members and others, but the Immigration Judge gave that evidence diminished weight because the witnesses did not appear in person. Dkt. No. 3-2 at 4.

4

The merits hearing on Petitioner's application for relief from removal took place on June 11, 2025. Dkt. No. 14 ¶ 37. The Immigration Judge issued a written decision denying the application on June 26, 2025. *Id.* Petitioner filed a notice of appeal on July 23, 2025, which remains pending. *Id.*; Tr. at 18:14–20. Petitioner remains in detention at the Orange County Jail. Dkt. No. 14. ¶ 42.

## II. PROCEDURAL HISTORY

On August 15, 2025, Petitioner filed the Petition. *See* Dkt. Nos. 1, 3. Petitioner alleged that the Government violated his Fifth Amendment due process rights by failing to provide him with a bond hearing in which the government bore the burden of proof to justify his continued detention. Pet. ¶ 70. Petitioner also alleged that the Board of Immigration Appeals ("BIA") violated the Administrative Procedure Act ("APA") by issuing the 1999 decision *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999), which shifted the burden in immigration bond hearings to the party seeking relief. *Id.* ¶ 80. Petitioner requested the following relief: (i) an order directing Respondents to immediately release him from custody unless they provide him with a bond hearing in which the Government would bear the burden of justifying his continued detention and the adjudicator considered alternatives to detention and petitioner's ability to pay; and (ii) attorneys' fees and costs pursuant to the Equal Justice Act, 28 U.S.C. § 2412. The Government opposed the Petition on September 3, 2025, Dkt. No. 13, and Petitioner filed a reply in support of the petition on September 17, 2025, Dkt. No. 16. On October 10, 2025, the Court held a hearing on the Petition.[4]

---

[4] Citations to the transcript of the October 10, 2025 hearing are denoted as "Tr. [Pincite]."

**DISCUSSION**

I. **LEGAL STANDARD**

Petitioner's detention is authorized by 8 U.S.C. § 1226(a), which allows "an alien" to be "arrested and detained pending a decision on whether the alien is to be removed from the United States." Petitioner moves for relief pursuant to 28 U.S.C § 2241. Under 28 U.S.C § 2241(c)(3), federal courts may grant a writ of habeas corpus to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). Habeas corpus is an "adaptable remedy." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "The equitable and flexible nature of habeas relief . . . gives the reviewing court considerable latitude 'to correct errors that occurred during the prior proceedings.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (quoting *Boumediene*, 553 U.S. at 786).[5]

II. **ANALYSIS**

The Government opposes Petitioner's application on four grounds. First, the Government argues that the Court should require Petitioner to exhaust his administrative remedies before considering his Petition. Dkt. No. 15 at 15. Second, the Government claims that Petitioner's bond hearing was constitutionally adequate. *Id.* at 15–16. Third, the Government argues that if the Court grants a new bond hearing, the Immigration Judge should not be required to consider alternatives to detention or Petitioner's ability to pay (or, in the alternative, should only be required to consider those factors as to risk of flight, but not as to dangerousness). *Id.* at 21. Fourth, the Government argues that Petitioner's APA claim lacks merit. *Id.* at 24.

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

### A. The Government's Exhaustion Argument Is Moot

The Government concedes that "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention in federal court." Dkt. No. 15 at 12 (quoting *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)). "Courts in this District routinely excuse noncitizens' failure to exhaust administrative remedies when noncitizens challenge the burden allocation at a Section 1226(a) bond hearing." *J.C.G. v. Genalo*, No. 24-CV-08755 (JLR), 2025 WL 88831, at *5 (S.D.N.Y. Jan. 14, 2025) (collecting cases). This excusal is made on the grounds that "[t]he BIA has repeatedly affirmed its position that detainees bear the burden of proof during a bond hearing pursuant to Section 1226(a)," *P.M. v. Joyce*, No. 22-CV-6321 (VEC), 2023 WL 2401458, at *1 n.2 (S.D.N.Y. Mar. 8, 2023), and thus any attempt to challenge that burden allocation before the BIA would be futile.

Regardless, the question of exhaustion has been mooted by the BIA's recent denial of Petitioner's appeal of the bond determination, while the Petition was pending. Dkt. No. 21.

### B. Petitioner is Entitled to a Burden-Shifted Bond Hearing

The parties agree that the Second Circuit's analysis in *Velasco Lopez* applies to whether Petitioner is entitled to a burden-shifted bond hearing but dispute the outcome of that analysis as applied to the Petition. The facts of *Velasco Lopez* are substantially similar to the facts of this case. In *Velasco Lopez*, the petitioner had been detained pursuant to 8 U.S.C. § 1226(a). *Velasco Lopez,* 978 F.3d at 845. He was denied bond at various bond hearings because he was unable to carry the burden of proving that he was neither a danger to the community nor a flight risk. *Id.* at 845–46. Like Petitioner, the petitioner in *Velasco Lopez* sought a writ of habeas corpus and alleged that the burden allocation in his bond hearings rendered them unconstitutional. *Id.* at 846. After applying the three-factor balancing test set forth in *Mathews*

7

*v. Eldridge*, 424 U.S. 319 (1976), the court concluded that "Velasco Lopez's prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process." *Velasco Lopez*, 978 F.3d at 855.  It held that the appropriate redress for that violation was a new bond hearing in which the Government was required to justify Velasco Lopez's continued detention.  *Id.*

The court in *Velasco Lopez* made clear that it would not "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden."  *Id.* at 855 n.13.  Instead, it applied the *Mathews* factors to the petitioner's particular circumstances.  The Court will follow the same approach and apply the *Mathews* factors to determine whether due process requires that Petitioner receive a burden-shifted bond hearing.  The *Mathews* factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  Each of these factors weighs in favor of Petitioner.

The first factor weighs in Petitioner's favor because, as the Supreme Court and the Second Circuit have repeatedly emphasized, the private right at stake—Petitioner's "interest in being free from imprisonment"—is "the most significant liberty interest there is." *Velasco Lopez*, 978 F.3d at 851.  Here, Petitioner has been detained at the Orange County Jail for nine months where he has been "held alongside criminally charged defendants and those serving criminal sentences," but has "no rights analogous to Sixth Amendment speedy trial rights." *Id.* And while his detention has not reached the length of the petitioner's detention in *Velasco Lopez*,

it has still extended beyond the presumptive limit to a reasonable duration of post-removal-order detention. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *see also Black v. Decker*, 103 F.4th 133, 151, 156 (2d Cir. 2024) (holding that a district court properly determined that a petitioner who had been detained for seven months was entitled to a bond hearing at which the Government bore the burden of proof).

Furthermore, there is a significant possibility that Petitioner's detention could extend far longer as a result of the appeals process. *See* Pet. ¶ 28 (noting that if Petitioner's appeal is granted, the case will likely be remanded for further months-long proceedings and if denied, Petitioner will likely appeal to the Second Circuit in a months or years-long process); *see also Hernandez v. Decker*, No. 18-CV-05026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[P]ursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged."). Petitioner's detention has also had negative effects on other persons: As a result of his detention, Petitioner's younger brothers have struggled to afford rent on their previously-shared apartment. *See* Pet. ¶ 3; *see also Black*, 103 F.4th at 151 (finding that a petitioner's private interest was "seriously affected" by his seven-month detention which "led unsurprisingly to serious financial difficulties for his family"). Accordingly, the first factor weighs in Petitioner's favor.

The second factor—the risk of erroneous deprivation of Petitioner's liberty interests— also weighs in Petitioner's favor because requiring Petitioner to bear the burden of proof at his bond hearing substantially increased the risk of erroneous detention. As the Second Circuit explained in *Black*, "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern." *Black*, 103 F.4th at 156. Thus, requiring individuals like Petitioner to "prove that they are *not* a danger and *not* a flight risk—after the government has

9

enjoyed a presumption that detention is necessary—presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged." *Id.*

Here, the Immigration Judge's decision to deny bail clearly derived from the burden being placed on Petitioner to prove that he did not present a danger to society or a risk of flight. The decision is replete with findings based on the detained Petitioner's inability to meet his burden. *See* Dkt. No. 3-2 at 3 (Petitioner "failed to establish to the Court's satisfaction that he does not pose a danger to people in the community after considering his arrest history"); *id.* at 4 (Petitioner "provided no testimony on [the 2017] arrest, and he did not provide sufficient evidence from his criminal proceedings to establish that, regardless of this arrest and dismissed charge, he is not a danger to the people or property in his community"); *id.* at 5 ("Although [Petitioner] provided evidence that he has attended the same religious organization in Brooklyn for five years, he provided no other evidence to establish that he is not a flight risk."). The Immigration Judge's decision to continue Petitioner's detention was clearly influenced by his perception that Petitioner did not present evidence strong enough to overcome the evidentiary burden placed on him. The application of this evidentiary burden increased the risk of erroneously depriving Petitioner of his liberty because he was detained, at least in part, due to his inability to overcome the evidentiary burden placed on him, rather than an Immigration Judge's unequivocal determination that Petitioner would present a danger to the community or risk of flight if released.

The Government argues that Petitioner has not sufficiently shown that the Immigration Judge's finding that Petitioner was an "extreme flight risk" would be altered even if the burden allocation were reversed. Dkt. No. 15 at 19. To be sure, certain factors on which the Immigration Judge relied (namely Petitioner's 2017 failure to appear for an immigration

10

proceeding and subsequent failure to answer a traffic summons) may still be relevant at a burden-shifted hearing.  *See* Dkt. No. 3-2 at 5.  But as Petitioner points out, in a burden-shifted hearing, the Government would have to establish these facts and Petitioner would be entitled to present rebuttal evidence.  On rebuttal, Petitioner proffers that he could put forth evidence that he did not receive notice of either of these proceedings in his native language and, thus, his failure to appear was excusable or should be given little weight in establishing his risk of flight.  Tr. 8:3–8.  Furthermore, other components of the Immigration Judge's decision unquestionably resulted from placing the burden on Petitioner.  *See* Dkt. No. 3-2 at 5 ("[Petitioner] failed to provide evidence to establish he has stable ties to his community . . . he provided no evidence about any employment he currently has or maintained since his entry to the United States. . . [Petitioner] provided one letter from his nephew that describes how [Petitioner] supports him and [Petitioner's] sister emotionally and financially; however, he did not provide letters from any of his siblings to demonstrate that they have strong connections with each other that would minimize [Petitioner's] risk of flight.").  The record also demonstrates that the Government did not put forth any evidence at all in advance of the hearing, indicating that if the burden allocation had been reversed, it is nearly impossible to conclude that the Government would have prevailed.  Dkt. No. 3-1 ¶ 6.  Thus, there is a clear risk of erroneous deprivation of Petitioner's rights that resulted from the evidentiary burden placed on him during the bond hearing.

The third and final factor—the Government's interest—also weighs in favor of Petitioner.  As the Court explained in *Velasco Lopez*, "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose."  *Velasco Lopez*, 978 F.3d at 854.  That statement applies with equal force here.

Because all three of the *Mathews* factors weigh in favor of Petitioner, the Government must release Petitioner unless it provides him with a renewed bond hearing in which the Government bears the burden of justifying his ongoing detention.

### C. The Immigration Judge Must Consider Alternatives to Detention and Petitioner's Ability to Pay

"Courts in this District overwhelmingly agree that [Immigration Judges] must consider . . . alternatives to imprisonment and ability to pay. . . when determining bond for a detained immigrant." *O.F.C*, 2022 WL 4448728, at *10.  And the Second Circuit has explained that, at least in evaluating risk of flight, "refusing to consider ability to pay and alternative means of assuring appearance creates a serious risk that the noncitizen will erroneously be deprived of the right to liberty purely for financial reasons." *Black,* 103 F.4th at 158.  At oral argument, the Government conceded that "an alternative to detention and ability to pay obviously come into play with risk of flight." Tr. 22:23–24.  But it argued that the Immigration Judge should not be required to consider these factors if he or she determines that petitioner is a danger to the community.  *See* Dkt. No. 15 at 21.  That argument is of no moment given the posture of this case.  Here, Petitioner requested that the Court order the Immigration Judge to consider Petitioner's ability to pay and alternatives to detention in a new bond hearing.  Pet. at 27.  Because no determination has been made as to whether Petitioner is a danger to the community in the new hearing, precluding the Immigration Judge from considering these factors before any finding on dangerousness is made, under the appropriate evidentiary standard, would unnecessarily limit Petitioner's due process rights.

Furthermore, it seems unlikely that Petitioner would be deemed a danger to the community, which no conditions or combination of conditions could address, in a hearing in which the Government bears the burden of proof.  The charges related to both of Petitioner's

12

arrests have been dismissed and his underlying conduct—picking up a wallet left behind at a store and purchasing a moped with invalid license plates and then operating that moped without independently assessing the validity of the plates—do not appear to indicate dangerousness. Dkt. No. 3-1 ¶ 7.  Ordering the Immigration Judge to consider alternatives to detention and ability to pay in this circumstance is necessary to ensure that Petitioner will not "erroneously be deprived of the right to liberty." *Black*, 103 F.4th at 158.  Consideration of these factors would also not interfere with the Immigration Judge's discretion because the Immigration Judge could weigh the factors as he or she sees fit, alongside whatever evidence is presented by the Government and by Petitioner in rebuttal at the bond hearing.  *See O.F.C. v. Decker*, No. 22-CV-02255 (JPC), 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022).[6]  Thus, at any subsequent bond hearing, the Immigration Judge must consider alternatives to detention and Petitioner's ability to pay before making a final determination as to continued detention, conditions of release, or the amount of any bond.

Contrary to the Government's position, this holding is consistent with *Black*'s conceptual framework, as discussed above, in which there is no logical reason why the Government's burden on dangerousness should be treated differently than risk of flight, at least when it comes to alternatives to detention.  *Black* clearly held that, at a renewed bond hearing, the burden is on the Government to *justify an alien's continued detention* by clear and convincing evidence; inherent to the justification for continued detention is that there are no conditions short of detention that could meet the Government's interests in protecting the public and assuring the alien's return to court.  *Black*, 103 F.4th at 155–56.  Finally, every district court in this Circuit

---

[6] Because the Court has granted the Petition based on Petitioner's constitutional claims, it does not address his APA claim.  *See Guerrero v. Decker*, No. 19-CV-11644 (KPF), 2020 WL 1244124, at *5 n.3 (S.D.N.Y. Mar. 16, 2020) (declining to consider APA claims for the same reason).

that has considered this question since *Black*—whether *Black* excludes consideration of alternatives to detention when assessing whether the Government has met its burden to justify continued detention based on clear and convincing evidence of dangerousness—has concluded that it does not, for substantially the reasons outlined here. *See, e.g.*, *M.P.L. v. Arteta*, 25-CV-5307 (VSB)(SDA), 2025 WL 2938993 at *6 (S.D.N.Y. Oct. 16, 2025) (collecting cases). This Court sees no reason to diverge from this consensus.

## CONCLUSION

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is GRANTED. The Government shall release Petitioner from custody immediately unless it provides him with a constitutionally adequate individualized hearing within 14 days of this Opinion. At the hearing, the Government will bear the burden of establishing by clear and convincing evidence that Petitioner's continued detention is justified on account of danger to the community or risk of flight, and the adjudicator shall meaningfully consider Petitioner's ability to pay and any reasonable alternatives to detention prior to making a final ruling on continued detention, conditions of release, or the amount of any bond.

Should Petitioner seek to submit an Equal Access to Justice Act application for fees, it shall submit that application within 14 days of this Opinion.

Dated: November 26, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge